IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE 1228 INVESTMENT GROUP, L.P., *Plaintiff,*<br><br>v.<br><br>BWAY CORPORATION, *Defendant.* | CIVIL ACTION<br>NO. 20-4328 |

**PAPPERT, J.** August 9, 2021

**MEMORANDUM**

In 2019, BWAY Corporation and the IT Support Center entered into a contract for ITSC to provide BWAY information technology support services. BWAY sought to end the agreement in 2020 but ITSC insists BWAY breached the contract by failing to properly terminate before denying its employees access to ITSC's services. Instead of suing BWAY for breach of contract, ITSC assigned its rights and interest in that cause of action to The 1228 Investment Group. 1228 sued, claiming BWAY breached the agreement. BWAY and 1228 each move for summary judgment.[1] Because the contract is ambiguous, the Court denies both Motions.

---

[1] 1228 moves for only partial summary judgment "on the issue of liability." (Pl's Mot. for Partial Summ J. 1, ECF 24.)

I

A

BWAY is a Delaware corporation that contracted with ITSC for IT support services. (Am. Compl. ¶¶ 5, 7, ECF 3.) 1228 is a Pennsylvania Limited Partnership.[2] (*Id.* ¶ 1.) Jeffrey Becker is a Director at ITSC and a general and limited partner of 1228. (*Id.* ¶¶ 2–3; *Id.*, Def's Ex. 1, ECF 25-8.) On July 19, 2019, BWAY and ITSC formed an agreement for ITSC to provide BWAY "remote information technology support services." (Pl's SUMF ¶¶ 1–2, ECF 24-3.) The parties simultaneously executed a Master Services Agreement and a Statement of Work. (Def's SUMF ¶¶ 1–2, ECF 25-3; Pl's SUMF ¶¶ 1–2.) The MSA broadly governed the parties' obligations and the SOW specified the support services ITSC would provide BWAY. *See* (Def's Ex. 1, ECF 25-8; Pl's Exs. 1–2, ECF 27-2, 27-3).

Section 1 of the MSA provides that all SOWs "will be attached hereto and made a part hereof for all purposes." (Def's Ex. 1; Pl's Ex. 1.) The first Section also explains that "if the terms of a Statement of Work conflict with the terms of this Agreement and this Agreement or the Statement of Work do not clearly provide otherwise, the terms of this Agreement shall govern and control for all purposes." (*Id.*) The MSA lays out its term, saying it will remain in effect "for as long as there are Statements of Work in effect under this Agreement," then says, "[t]he term and termination for each

---

[2] The parties identified a potential dispute regarding the Court's subject matter jurisdiction based on the citizenship of 1228's partners. *See* (Def's Mot. for Summ. J. 2–3, ECF 25; Pl's Resp. 7–8, ECF 27.) Each partner is a citizen of Pennsylvania. (Pl's Resp. 8.) Because BWAY is a Delaware corporation with its principal place of business in Illinois, the parties are diverse and the Court has jurisdiction. *See* (Am. Compl. ¶ 5; Answer ¶ 5).

2

Statement of Work shall be specified in the individual Statement of Work."  (*Id.*) (MSA § 9.1.)  The MSA also explains that

> [a]ll notices and other communications required or permitted to be given under this Agreement will be in writing and will be delivered personally, or mailed by registered certified mail, return receipt requested or FedEx, or equivalent national delivery service, and addressed to the parties at their respective address set forth on the signature page of this Agreement.[3]

(*Id.*) (MSA § 10.2.)  Finally, the MSA provides: "This Agreement, the Exhibits attached hereto and all Statements of Work executed in accordance with and governed by its terms contain the entire agreement between the parties."  (*Id.*) (MSA § 10.8.)

Paragraph 4 of the SOW explains that it "will automatically renew . . . unless either party notifies the other in writing not less than 30 days prior to the expiration of the term or any Renewal Term."  (Def's Ex. 1; Pl's Ex. 2.)

B

In June of 2020, BWAY representative Robin Shinkle emailed ITSC director Nicholas Tresp BWAY's intention to terminate the agreement.  (Def's Ex. 2, ECF 25-9; Pl's Ex. 4, ECF 27-5.)  Shinkle cited Paragraph 4 of the SOW, explained he was providing notice more than 30 days before the end of the term, and asked when the agreement would terminate.  (*Id.*)  Tresp tried to convince BWAY to retain ITSC but eventually accepted BWAY's termination on July 1, 2020.  (*Id.*)  He explained that, although he hoped to reach an agreement to keep BWAY's account open, the agreement was "set for scheduled termination" on August 17.  (*Id.*)  BWAY shut off its employees' access to ITSC's services based on its understanding that the contract would expire on August 17.  *See* (Def's Ex. 3, ECF 25-10).  On August 19, ITSC director Jeffrey Becker

---

[3]     Jeffrey Becker signed the MSA on behalf of ITSC, which lists its address as: One Tower Bridge, 100 Front Street, West Conshohocken, PA 19428.

emailed Shinkle claiming that BWAY breached the agreement when it blocked its employees from utilizing ITSC's services because BWAY's termination notice did not comply with MSA Section 10.2. (*Id.*) Shinkle contested Becker's position, explaining BWAY had complied with SOW Paragraph 4, which required notice of termination "in writing." (*Id.*)

ITSC then assigned to 1228 its right to sue BWAY under the agreement. (Pl's Ex. 9, ECF 27-10.) 1228 sued BWAY, arguing it breached the parties' agreement under the MSA and SOW when it blocked its employees' access to ITSC's service because it had not properly terminated the agreement. BWAY now argues it is entitled to summary judgment because: (1) ITSC's assignment to 1228 was invalid, so 1228 lacks standing to bring this case; (2) BWAY provided adequate notice of termination under the SOW, which terminated both the SOW and MSA; and (3) even if notice was improper, BWAY substantially complied with the notice requirement in the MSA. (Def's Mot. for Summ. J. 9–14, ECF 25.) 1228 opposes BWAY's Motion and itself moves for summary judgment, arguing that BWAY failed to comply with the MSA's notice requirement and therefore breached the agreement when it removed its employees' access to ITSC's services. (Pl's Resp. 7–20, ECF 27; Pl's Mot. for Partial Summ J. 6–11, ECF 24-1.)

II

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018). The movant bears the initial responsibility of informing the Court of the

4

basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  *See Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 145 (3d Cir. 2004), holding modified by *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500 (3d Cir. 2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it may affect the outcome of the suit under the governing law.  *Id.*  A mere scintilla of evidence supporting the nonmoving party will not suffice for a court to deny summary judgment.  *Id.* at 252.  Rather, the nonmovant must "set forth specific facts showing there is a genuine issue for trial."  *Id.* at 256.

In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor."  *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009).  The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment.  *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).  "The rule is no different where there are cross-motions for summary judgment." *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008).  "When confronted with cross-motions for summary judgment, '[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Perez v. Kwasny*, 159 F. Supp. 3d 565, 569

(E.D. Pa. 2016) (quoting *Schlegel v. Life Ins. Co. of N. Am.*, 269 F. Supp. 2d 612, 615 n.1 (E.D. Pa. 2003)).

### III

### A[4]

BWAY argues first that 1228 lacks standing because ITSC's assignment to 1228 is champertous and invalid. Black's Law Dictionary defines champerty as:

> [a]n agreement between an officious intermeddler in a lawsuit and a litigant by which the intermeddler helps pursue the litigant's claim as consideration for receiving part of any judgment proceeds; . . . an agreement to divide litigation proceeds between the owner of the litigated claim and a party unrelated to the lawsuit who supports or helps enforce the claim.

*Frank v. TeWinkle*, 45 A.3d 434, 438 (Pa. Super. Ct. 2012) (quoting Black's Law Dictionary (4th ed.)). In other words, champerty is "a bargain by a stranger with a party to a suit, by which such third person undertakes to carry on the litigation at his own cost and risk, in consideration of receiving, if successful, a part of the proceeds or subject to be recovered." *Belfonte v. Miller*, 243 A.2d 150, 152 (Pa. Super. Ct. 1968) (en banc). "Under Pennsylvania law, if an assignment is champertous, it is invalid." *Frank*, 45 A.3d at 438 (citing *Belfonte*, 243 A.2d at 152). "An assignment is champertous when the party involved: (1) has no legitimate interest in the suit, but for the agreement; (2) expends his own money in prosecuting the suit; and (3) is entitled by the bargain to share in the proceeds of the suit." *Id.* at 438–39 (citing *Belfonte*, 243 A.2d at 152).

---

[4] The Assignment between ITSC and 1228 specifies that the laws of Pennsylvania govern its construction, so the Court applies Pennsylvania law in considering its validity. (Def's Ex. C, ECF 25-7.)

6

BWAY argues the assignment between ITSC and 1228 meets all three elements for champerty. (Def's Mot. 9–10.) BWAY is correct that 1228 has "expend[ed its] own money in prosecuting the suit" and "is entitled by bargain to share in the proceeds of the suit." *Frank*, 45 A.3d at 438–39. But 1228 is no stranger to this litigation. Jeffrey Becker is a director and member of ITSC, a company he founded. (Def's Ex. A, Becker Dep. 16:8–18, 17:20–21, ECF 25-5; Pl's Resp., Becker Declaration ¶ 8, ECF 27-12.) He is also a general and limited partner of 1228, which manages his assets and the assets of the Becker Family Trust—"a trust formed for the benefit of the members of the Becker family." (Def's Ex. A, Becker Dep. 35:16–22; Pl's Resp., Becker Declaration ¶ 6.) Becker's close ties to, and financial interests in, ITSC and 1228 belie BWAY's argument that 1228 lacks a legitimate interest in this case. *See Digital Encoding Factory v. Iron Mountain Information Management, Inc.*, No. 06-cv-1449, 2008 WL 2316554, at *1 (W.D. Pa. June 4, 2008) (agreement not champertous where plaintiff's investors paid litigation costs because they were not strangers to plaintiff without an interest in the case); *Riffin v. Consolidated Rail Corp.*, 363 F. Supp. 3d 569, 576 (E.D. Pa. 2019) (champertous assignment where plaintiff "proffered no interest in th[e] litigation . . . beyond that which he purportedly acquired by the assignment"); *Frank*, 45 A.3d at 439 (assignment champertous where "nothing in the record indicat[ed] that Appellant had any direct interest in the underlying suits"); *WFIC, LLC v. LaBarre*, 148 A.3d 812, 819 (Pa. Super. Ct. 2016) (agreement champertous where litigation financers were "completely unrelated" to the true parties in interest); *Brandywine Heights Area Sch. Dist. v. Berks Cnty. Bd. of Assessment Appeals*, 821 A.2d 1262, 1265 (Pa. Cmmw. Ct. 2003) (champerty where realty advisor who was "not employed by [plaintiff], [ ] was

not involved in any case with the [plaintiff] as a property owner and [ ] had no connection whatsoever to [plaintiff's property]" pursued tax assessment appeals on behalf of plaintiff). On this record, BWAY has failed to establish that the assignment is champertous.

## B[5]

BWAY and 1228 each move for summary judgment based on their respective interpretations of the MSA, SOW and the interplay between the two. The Delaware Supreme Court "has long upheld awards of summary judgment in contract disputes where the language at issue is clear and unambiguous. . . . But, where reasonable minds could differ as to the contract's meaning, a factual dispute results and the factfinder must consider admissible extrinsic evidence. In those cases, summary judgment is improper." *GMG Cap. Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 783 (Del. 2012). Put simply, "in a dispute over the proper interpretation of a contract, summary judgment may not be awarded if the language is ambiguous and the moving party has failed to offer uncontested evidence as to the proper interpretation." *Id.* Courts examine the plain language of a contract to determine "not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 740 (Del. 2006). "In essence, this is an assessment of whether the reasonable expectations of the parties are convincingly established by the words of the contract standing alone—the language being so unequivocal that no reasonable person could

---

[5]  The MSA provides that the plaintiff in any suit regarding the MSA may choose to proceed under Pennsylvania or Delaware law. (MSA § 10.4.) 1228 has chosen Delaware law. (Am. Compl. ¶¶ 23–24.)

have expectations inconsistent with such language." *U.S. West, Inc. v. Time Warner Inc.*, Civ. A. No. 14555, 1996 WL 307445, at *9 (Del. Ch. June 6, 1996).

1

BWAY contends that it is entitled to summary judgment because it properly terminated the SOW and MSA by providing written notice of its intent not to renew the SOW. (Def's Mot. 10–14.) It's argument is straightforward: (1) MSA Section 9.1 provides that "[t]he term and termination for each Statement of Work shall be specified in the individual Statement of Work"; (2) the SOW says termination notices must be "in writing"; (3) BWAY emailed written notice that it intended to terminate the lone SOW; (4) the termination notice was therefore valid and effective and discharged its obligations under the SOW and MSA. *See* (*id.*).

BWAY's interpretation of the contract is reasonable. The MSA requires all notices be in writing and "delivered personally, or mailed by registered certified mail, return receipt requested or FedEx, or equivalent national delivery service, and addressed to the parties at their respective address set forth on the signature page of this Agreement." (Def's Ex. 1; Pl's Ex. 1) (MSA § 10.2.) That provision arguably conflicts with Paragraph 4 of the SOW, which says termination notices need only be "in writing," not delivered in any particular way. (Def's Ex. 1; Pl's Ex. 2.) And where the terms of the SOW conflict with the MSA, the terms of the MSA govern unless the MSA "clearly provide[s] otherwise." (Def's Ex. 1; Pl's Ex. 1) (MSA § 1.) It is reasonable to conclude that the MSA "clearly provide[s] otherwise" when it says that "[t]he term and termination for each Statement of Work shall be specified in the individual Statement of Work." (*Id.*) (MSA § 9.1); *see Counsel of the Dorset Condo. Apartments v. Gordon*, 801

A.2d 1, 7 (Del. 2002) ("A court must interpret contractual provisions in a way that gives effect to every term of the instrument, and that, if possible, reconciles all of the provisions of the instrument when read as a whole.")  BWAY's interpretation "represents a reasonable harmonization of apparently conflicting provisions." *United Rentals, Inc. v. RAM Holdings, Inc.*, 937 A.2d 810, 832 (Del. Ch. 2007).

2

1228 counters that it is entitled to summary judgment on this issue because BWAY failed to adhere to the MSA's notice provision and therefore did not terminate the agreement.  Like BWAY's, 1228's argument is not complicated: (1) the MSA incorporates the SOW, which is to be "governed by its terms"; (2) the MSA does not allow notice by email; (3) the SOW does not "clearly provide otherwise" where it says that any termination notice need only be "in writing"; (4) BWAY's termination notice was therefore invalid.  *See* (Pl's Mot. 7).

BWAY's interpretation of the contract is also reasonable.  The plain language of the MSA supports the position that the MSA incorporates the SOW and subjects it to the MSA's terms.  (Def's Ex. 1; Pl's Ex. 1) (MSA §§ 1, 10.8.)  The MSA has a specific notice requirement that details how the parties must deliver notices.  (*Id.*) (MSA § 10.2.)  Although the SOW says notice of termination must be in writing, it says nothing about the method of delivery.  Because it does not "clearly provide" an alternative delivery requirement, it is reasonable to conclude that the MSA's requirement applies.  In that way, 1228's interpretation also "represents a reasonable harmonization of apparently conflicting provisions." *United Rentals, Inc.*, 937 A.2d at 832.

3

BWAY and 1228 "have proffered reasonable readings of the [agreement], and because 'provisions in controversy are fairly susceptible of different interpretations or may have two or more different meanings, there is ambiguity.'" *United Rentals, Inc.*, 937 A.2d at 834 (quoting *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997)). In cases like this, where "each party is unable to demonstrate that its proposed interpretation of the [agreement] is the *only* interpretation of the [a]greement that is reasonable as a matter of law . . . summary judgment is inappropriate because the court is presented with a genuine issue of material fact: what was the intent of the parties?" *Id.* (emphasis in original). Accordingly, the Court denies the parties' Motions for Summary Judgment.[6]

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[6] BWAY also argues that, even if the notice provision in the MSA applies, it substantially complied with that provision and is therefore entitled to summary judgment. 1228 disagrees. The Court will not address those arguments because, as explained, the ambiguity in the agreement renders summary judgment inappropriate. *See GMG Cap. Invs., LLC*, 36 A.3d at 783.